1
2
3
4
5
6
7
8

**UNITED STATES DISTRICT COURT**

**DISTRICT OF NEVADA**

9  DONNY COOPER,                           )
                                          )
10         Petitioner,                    )        2:10-cv-01832-JCM-NJK
                                          )
11  vs.                                   )        **ORDER**
                                          )
12  STATE OF NEVADA, *et al.*,            )
                                          )
13         Respondents.                   )
   _____/

14

15        This action is a petition for a writ of habeas corpus filed pursuant to 28 U.S.C. § 2254, by

16  Donny Cooper, who is represented by counsel.  This matter comes before the court on the merits of

17  the petition.

18  **I. Procedural History**

19        On December 16, 1998, the state filed a criminal complaint charging petitioner with three

20  counts of attempted lewdness with a child under the age of 14 stemming from three incidents in 1998

21  with two separate children.  (Exhibit 2).[1]  On July 12, 1999, petitioner unconditionally waived his

22  preliminary hearing pursuant to the terms of a plea agreement in which he would plead to one felony

23  but the adjudication of the charge would be stayed for one year with conditions that he "stay out of

24

25        [1] The exhibits referenced in this order are found in the court's record at ECF No. 12.

26

1  trouble." (Exhibit 1).  If he stayed out of trouble, he would be able to withdraw his felony plea and

2  plead to a gross misdemeanor, but if he did not, he would be sentenced to a felony.  (Exhibit 1).

3         On July 23, 1999, the state filed an information and a no-contest plea agreement.  (Exhibits 3

4  & 4).  The no-contest plea agreement provided, in pertinent part, as follows:

5             I further understand that the Court will include as part of my sentence,
             in addition to any other penalties provided by law, lifetime supervision
6             commencing after any period of probation or any term of
             imprisonment and period of release upon parole; said special sentence
7             of lifetime supervision must begin upon release from incarceration.

8  (Exhibit 4, at p. 2).  On July 26, 1999, the court canvassed petitioner but did not mention lifetime

9  supervision.  (Exhibit 5).  Petitioner stated to the court at arraignment that he had reviewed the plea

10  agreement with his attorney who had answered any questions he had.  The state district court,

11  pursuant to the no-contest plea, stayed adjudication for one year and set a status check.  (Exhibit 5).

12        On June 15, 2000, the state received a package of witness statements from the police

13  department in Lothian, Scotland, U.K., attesting that petitioner, while attending a wedding in

14  Scotland, had sexually abused a thirteen-year-old boy.  (Exhibit 6).  On June 16, 2000, the state filed

15  a motion to order pre-sentence investigation report and a set sentencing date.  (Exhibit 6).  Petitioner

16  opposed the motion.  (Exhibit 7).  On July 26, 2000, and August 1, 2000, the state and petitioner

17  filed supplemental points and authorities.  (Exhibits 8 & 9).

18        On August 3, 2000, petitioner filed a motion requesting "a rehearing or a transfer of the case

19  back to department XI, or alternatively for a definitive ruling on the state's motion to renege on the

20  plea bargain, and if applicable, for a pre-sentence investigation report." (Exhibit 10).  On November

21  8, 2000, petitioner filed a pre-sentence memorandum.  (Exhibit 11).  On February 15, 2001, the court

22  adjudged petitioner guilty of attempted lewdness with a child under 14 and sentenced him to prison

23  for 36-96 months with lifetime supervision commencing upon completion of probation, parole, or

24  imprisonment; the transcript of the sentenced is mistakenly dated April 15, 2001.  (Exhibits 12 &

25

26

13).  On February 27, 2001, the court entered a judgment of conviction which sentenced petitioner to 36-96 months imprisonment and imposed a sentence of lifetime supervision.  (Exhibit 14).

On March 22, 2001, petitioner filed a notice of appeal.  (Exhibit 15).  On May 10, 2001, petitioner filed a fast track statement, arguing that in violation of Nevada law, the sentencing court relied upon a defective psychosexual evaluation because the report was not prepared by a psychologist or a psychiatrist, but by a social worker who did not use generally-accepted diagnostic tools.  (Exhibit 16).  By order filed November 1, 2001, the Nevada Supreme Court affirmed petitioner's conviction.  (Exhibit 18).  Remittitur was issued on November 27, 2001.  (Exhibit 19).

On March 11, 2002, petitioner filed a judicial notice which complained about his appellate attorney and set forth additional claims he wanted his attorney to raise.  None of the claims pertained to lifetime supervision.  (Exhibit 20).

On March 29, 2002, petitioner filed a post-conviction habeas petition and a memorandum of points and authorities in the state district court.  (Exhibits 21 & 22).  Petitioner argued that his appellate counsel was ineffective because he failed to raise claims that: (1) the state's expert used diagnostic tools which were not generally accepted; and (2) the court erred when it failed to allow live testimony of his medical experts.  (*Id.*).

On June 24, 2002, the court filed an amended judgment of conviction, which changed petitioner's credit for time served from 69 days to 97 days.  (Exhibit 26).

The state district court entered findings of fact, conclusions of law, and an order on August 6, 2002, denying petitioner's post-conviction habeas petition.  (Exhibit 28).  Petitioner filed a notice of appeal.  (Exhibit 27).  By order filed March 3, 2003, the Nevada Supreme Court affirmed the denial of the post-conviction habeas petition.  (Exhibit 29).  Remittitur issued March 28, 2003.  (Exhibit 30).

On March 11, 2005, petitioner was paroled from prison.  On June 24, 2005, his sentence was discharged.  On June 29, 2005, petitioner filed a motion to strike his lifetime supervision.  (Exhibit

3

31).  The court denied petitioner's motion on June 22, 2005.  (Exhibit 32).  Petitioner did not appeal the denial of this motion.

On October 8, 2007, petitioner filed a motion to allow interstate transfer of lifetime supervision to Arkansas.  (Exhibit 33).  A hearing on the motion was held on October 23, 2007, and the court denied the motion without prejudice.  (Exhibit 34, at p. 6; Exhibit 35).

On January 28, 2008, petitioner filed a motion to correct an illegal sentence.  (Exhibit 36).  Petitioner argued that his no-contest plea was not knowingly entered into because he received no advice on the nature and requirements of lifetime supervision.  (*Id.*).  A hearing on this motion was held on March 12, 2008.  (Exhibit 39).  On July 1, 2008, the state district court entered a written ruling denying the motion.  (Exhibit 40).  Petitioner appealed.  (Exhibit 41).  By order filed October 22, 2009, the Nevada Supreme Court affirmed the denial of the motion to correct illegal sentence.  (Exhibit 44).  Remittitur issued on November 17, 2009.  (Exhibit 45).

On October 20, 2010, through counsel, petitioner filed the federal habeas petition.  (ECF No. 1).  Petitioner alleges that he did not knowingly or intelligently enter his no-contest plea because the plea agreement failed to explain the material terms and conditions of lifetime supervision.  Petitioner also alleges that his counsel was ineffective for failing to properly advise him of the exact nature of the lifetime supervision requirements.  (ECF No. 1).

Respondents filed a motion to dismiss on December 13, 2010, asserting that petitioner failed to name the proper custodian in the caption of his petition.  (ECF No. 5).  By order filed May 9, 2011, the court denied respondents' motion to dismiss and directed petitioner to file an amended caption page naming the proper respondents.  (ECF No. 8).  On May 11, 2011, petitioner filed an amended caption page.  (ECF No. 9).  On May 16, 2011, the court set further scheduling deadlines, specifically, respondents were directed to answer the petition within forty-five days and petitioner was directed to file a reply within forty-five days of being served with the answer.  (ECF No. 10).

1    Respondents filed an answer on June 30, 2011, along with exhibits.  (ECF Nos. 11 & 12).

2  Petitioner did not exercise his right to file a reply to the answer.  *See* order at ECF No. 10; *see also*

3  Rules Governing Section 2254 Cases in the United States District Courts, at Rule 5(c) ("The

4  petitioner may submit a reply to respondents' answer or other pleading within a time fixed by the

5  judge." ).  On May 14, 2013, petitioner filed a motion requesting a decision.  (ECF No. 14).

6  **II.  Federal Habeas Corpus Standards**

7    The Antiterrorism and Effective Death Penalty Act ("AEDPA"), at 28 U.S.C. § 2254(d),

8  provides the legal standard for the court's consideration of this habeas petition:

9    An application for a writ of habeas corpus on behalf of a person in
   custody pursuant to the judgment of a State court shall not be granted
10    with respect to any claim that was adjudicated on the merits in State
   court proceedings unless the adjudication of the claim –

11
   (1) resulted in a decision that was contrary to, or involved an
12    unreasonable application of, clearly established Federal law, as
   determined by the Supreme Court of the United States; or

13
   (2) resulted in a decision that was based on an unreasonable
14    determination of the facts in light of the evidence presented in the State
   court proceeding.

15
    The AEDPA "modified a federal habeas court's role in reviewing state prisoner applications
16
  in order to prevent federal habeas 'retrials' and to ensure that state-court convictions are given effect
17
  to the extent possible under law." *Bell v. Cone,* 535 U.S. 685, 693-694 (2002).  A state court
18
  decision is contrary to clearly established Supreme Court precedent, within the meaning of 28 U.S.C.
19
  § 2254, "if the state court applies a rule that contradicts the governing law set forth in [the Supreme
20
  Court's] cases" or "if the state court confronts a set of facts that are materially indistinguishable from
21
  a decision of [the Supreme Court] and nevertheless arrives at a result different from [the Supreme
22
  Court's] precedent." *Lockyer v. Andrade,* 538 U.S. 63, 73 (2003) (quoting *Williams v. Taylor,* 529
23
  U.S. 362, 405-406 (2000) and citing *Bell v. Cone,* 535 U.S. 685, 694 (2002)).  The formidable
24
  standard set forth in section 2254(d) reflects the view that habeas corpus is "'a guard against extreme
25
  malfunctions in the state criminal justice systems,' not a substitute for ordinary error correction
26

5

1  through appeal." *Harrington v. Richter*, 562 U.S. ___, ___, 131 S.Ct. 770, 786 (2011) (quoting

2  *Jackson v. Virginia*, 443 U.S. 307, 332 n.5 (1979)).

3        A state court decision is an unreasonable application of clearly established Supreme Court

4  precedent, within the meaning of 28 U.S.C. § 2254(d), "if the state court identifies the correct

5  governing legal principle from [the Supreme Court's] decisions but unreasonably applies that

6  principle to the facts of the prisoner's case." *Lockyer v. Andrade,* 538 U.S. at 75 (quoting *Williams*,

7  529 U.S. at 413). The "unreasonable application" clause requires the state court decision to be more

8  than merely incorrect or erroneous; the state court's application of clearly established federal law

9  must be objectively unreasonable. *Id.* (quoting *Williams*, 529 U.S. at 409). In determining whether a

10  state court decision is contrary to, or an unreasonable application of federal law, this court looks to

11  the state courts' last reasoned decision. *See Ylst v. Nunnemaker*, 501 U.S. 797, 803-04 (1991);

12  *Shackleford v. Hubbard*, 234 F.3d 1072, 1079 n.2 (9ᵗʰ Cir. 2000), *cert. denied*, 534 U.S. 944 (2001).

13        In a federal habeas proceeding, "a determination of a factual issue made by a state court shall

14  be presumed to be correct," and the petitioner "shall have the burden of rebutting the presumption of

15  correctness by clear and convincing evidence." 28 U.S.C. § 2254(e)(1). If a claim has been

16  adjudicated on the merits by a state court, a federal habeas petitioner must overcome the burden set

17  in § 2254(d) and (e) on the record that was before the state court. *Cullen v. Pinholster*, 131 S.Ct.

18  1388, 1400 (2011).

19  **III. Discussion**

20        **A. Petition is Untimely under the AEDPA**

21        The Antiterrorism and Effective Death Penalty Act (AEDPA) amended the statutes

22  controlling federal habeas corpus practice to include a one-year statute of limitations on the filing of

23  federal habeas corpus petitions. With respect to the statute of limitations, the habeas corpus statute

24  provides:

25                  (d)(1) A 1-year period of limitation shall apply to an application
                for a writ of habeas corpus by a person in custody pursuant to the

26

judgment of a State court.  The limitation period shall run from the latest of–

>   (A) the date on which the judgment became final by the conclusion of direct review or the expiration of the time for seeking such review;
>
>   (B) the date on which the impediment to filing an application created by State action in violation of the Constitution or laws of the United States is removed, if the applicant was prevented from filing by such State action;
>
>   (C) the date on which the constitutional right asserted was initially recognized by the Supreme Court, if the right has been newly recognized by the Supreme Court and made retroactively applicable to cases on collateral review; or
>
>   (D) the date on which the factual predicate of the claim or claims presented could have been discovered through the exercise of due diligence.
>
> (2) The time during which a properly filed application for State post-conviction or other collateral review with respect to the pertinent judgment or claim is pending shall not be counted toward any period of limitations under this subsection.

28 U.S.C. § 2244(d).

For purposes of the AEDPA limitations period, "a judgment becomes 'final' in one of two ways – either by the conclusion of direct review by the highest court, including the United States Supreme Court, to review the judgment, or by the expiration of the time to seek such review, again from the highest court from which such direct review could be sought." *Wixom v. Washington*, 264 F.3d 894, 897 (9th Cir. 2001).  "[W]hen a petitioner fails to seek a writ of certiorari from the United States Supreme Court, the AEDPA's one-year limitations period begins to run on the date the ninety-day period defined by Supreme Court Rule 13 expires." *Bowen v. Roe*, 188 F.3d 1157, 1159 (9th Cir. 1999).  United States Supreme Court Rule 13.1 provides that a petitioner has ninety days from the entry of judgment or entry of an order denying rehearing, within which to file a petition for certiorari. Sup. Ct. R. 13.1.  Rule 36(a) of the Nevada Rules of Appellate Procedure states that "[t]he filing of the court's decision or order constitutes entry of judgment."  Where a petitioner pursues a direct

1    appeal to the state's highest court but declines to pursue a petition for writ of certiorari with the

2    United States Supreme Court, the petitioner's conviction becomes final upon the expiration of the

3    time to file a petition for writ of certiorari. *See Jimenez v. Quarterman*, 555 U.S. 113, 119 (2009).

4    Once the judgment of conviction becomes final, the petitioner has 365 days to file a petition for

5    relief under 28 U.S.C. § 2254, with tolling of the time for filing during the pendency of a properly

6    filed application for state post-conviction or other collateral review with respect to the pertinent

7    judgment or claim . . . ."  28 U.S.C. § 2254(d).

8         In the instant case, the judgment of conviction was entered on February 27, 2001.  (Exhibit

9    14).  The Nevada Supreme Court's order of affirmance on direct review was filed on November 1,

10   2001.  (Exhibit 18).  Because petitioner did not file a petition for writ of certiorari to the United

11   States Supreme Court, his conviction became final on January 30, 2002, which is ninety days after

12   the Nevada Supreme Court filed its order of affirmance.  The AEDPA statute of limitations began to

13   run on January 31, 2002.

14        On March 29, 2002, when petitioner filed his state habeas petition, 51 days of untolled time

15   for filing a federal petition had elapsed.  (Exhibit 21).  The AEDPA limitations period was tolled

16   until petitioner's state habeas petition and appeal from the denial of his petition was resolved by the

17   Nevada Supreme Court.  *See* 28 U.S.C. § 2244(d)(2).  On March 3, 2003, the Nevada Supreme Court

18   entered an order affirming the denial of petitioner's post-conviction state habeas petition.  (Exhibit

19   29).  Remittitur was issued on March 28, 2003.  (Exhibit 30).  The period of tolling under 28 U.S.C.

20   § 2244(d)(2) ended with the Nevada Supreme Court's issuance of remittitur on March 28, 2003.  The

21   AEDPA statute of limitations began to run again and expired 314 days later, on February 6, 2004.

22   On October 20, 2010, through counsel, petitioner filed the federal habeas petition.  (ECF No. 1).  The

23   federal petition was filed untimely, years after the expiration of the AEDPA limitations period.

24        The United States Supreme Court has held that the AEDPA's statute of limitations "is subject

25   to equitable tolling in appropriate cases."  *Holland v. Florida*, 130 S.Ct. 2549, 2560 (2010).  The

26

1  Supreme Court reiterated that "a petitioner is entitled to equitable tolling only if he shows: '(1) that

2  he has been pursuing his rights diligently, and (2) that some extraordinary circumstance stood in his

3  way' and prevented timely filing." *Holland*, 130 S.Ct. at 2562 (quoting *Pace v. DiGuglielmo*, 544

4  U.S. 408, 418 (2005)).  In the instant case, petitioner has not presented this court with any argument

5  or evidence that he is entitled to equitable tolling.  As such, the federal habeas petition is subject to

6  dismissal with prejudice as untimely.

7  **B. Petition Lacks Merit**

8  Even assuming that the petition was not time-barred, the federal habeas petition lacks merit.

9  Petitioner alleges that he did not knowingly and intelligently make his no-contest plea because the

10  plea agreement was vague and ambiguous regarding the lifetime supervision requirement.

11  Under federal law, to be valid, a guilty plea must be knowing, voluntary, and intelligent.  *U.S.*

12  *v. Brady*, 397 U.S. 742, 748 (1970).  A guilty plea must represent a voluntary and intelligent choice

13  among alternative courses of action open to a defendant.  *Hill v. Lockhart,* 474 U.S. 52, 56 (1985).

14  Advice for a guilty plea does not require a description of every element of the offense.  *Bargas v.*

15  *Burns*, 179 F.3d 1207, 1216 (9th Cir. 1999) (citation omitted).  The court looks to what a defendant

16  reasonably understood at the time of the plea.  *U.S. v. Quan*, 789 F.2d 711, 713 (9th Cir. 1986).  The

17  record must demonstrate that the defendant understands that he is waiving his privilege against self-

18  incrimination, his right to a jury trial, and his right to confront accusers.  *Boykin v. Alabama*, 395

19  U.S. 238, 243 (1969).  "Solemn declarations in open court carry a strong presumption of verity."

20  *Blackledge v. Allison*, 431 U.S. 63, 73-74 (1977); *see also United States v. Anderson*, 993 F.2d 1435,

21  1438 (9th Cir. 1993) (defendant's statements, made in open court at time of his plea, are entitled to

22  great weight).

23  In the instant case, the no-contest plea agreement provided, in pertinent part, as follows:

24  I further understand that the Court will include as part of my sentence, in addition to any other penalties provided by law, **lifetime**

25  **supervision** commencing after any period of probation or any term of imprisonment and period of release upon parole; **said special sentence**

26

9

**of lifetime supervision must begin upon release from incarceration.**

(Exhibit 4, at p. 2) (emphasis added).  The agreement further provides that: "All of the foregoing elements, consequences, rights, and waiver of rights have been thoroughly explained to me by my attorney." (*Id.*, at p. 4).  On July 26, 1999, the state district court canvassed petitioner, but did not specifically mention lifetime supervision. (Exhibit 5).  During the canvass, petitioner stated to the judge that he had reviewed the plea agreement with his attorney, who had answered any questions he had. (*Id.*).

On appeal from the denial of petitioner's motion to correct illegal sentence, the Nevada Supreme Court ruled that petitioner's claim fell outside of the narrow scope of claims permitted in a motion to correct an illegal sentence. (Exhibit 44, at p. 2).  The Court ruled that petitioner's sentence is "facially legal and nothing in the record indicates that the district court lacked jurisdiction to impose the sentence." (*Id.*).  The Nevada Supreme Court further stated:

> Finally, we note that Cooper acknowledges that he was informed in the guilty plea agreement that he would be subject to lifetime supervision, and therefore he cannot demonstrate that his guilty plea was invalid on this basis.  See Palmer v. State, 118 Nev. 823, 831, 59 P.3d 1192, 1197 (2002) (holding that this court will not invalidate a guilty plea if the totality of the circumstances indicate that the defendant was aware of the consequence of lifetime supervision prior to the entry of the guilty plea).  Accordingly, we conclude that the district court did not err by denying Cooper's motion and we order the judgment of the district court affirmed.

(*Id.*, at pp. 2-3).  The Nevada Supreme Court's ruling was reasonable.  Looking to what petitioner reasonably understood at the time of the no-contest plea, this court finds that the no-contest plea agreement clearly informed petitioner that his sentence included a lifetime supervision. *See U.S. v. Quan*, 789 F.2d 711, 713 (9th Cir. 1986).  Reviewing both the no-contest plea agreement (Exhibit 4) and the state district court's canvass of petitioner regarding his plea (Exhibit 5), this court finds that all provisions of the no-contest plea were knowing, voluntary, and intelligent. *Hill v. Lockhart,* 474 U.S. 52, 56 (1985); *U.S. v. Brady*, 397 U.S. 742, 748 (1970).  Petitioner has cited no applicable

10

1  federal authority for the proposition that the language contained in the no-contest plea agreement was

2  insufficient to inform petitioner that his sentence included lifetime supervision.  Petitioner has failed

3  to meet his burden of proving that the Nevada Supreme Court's ruling was contrary to, or involved

4  an unreasonable application of, clearly established federal law, as determined by the United States

5  Supreme Court, or that the ruling was based on an unreasonable determination of the facts in light of

6  the evidence presented in the state court proceeding.  The federal habeas petition in this case is

7  without merit.

8  **IV.  Certificate of Appealability**

9       District courts are required to rule on the certificate of appealability in the order disposing of

10 a proceeding adversely to the petitioner or movant, rather than waiting for a notice of appeal and

11 request for certificate of appealability to be filed.  Rule 11(a).  In order to proceed with his appeal,

12 petitioner must receive a certificate of appealability.  28 U.S.C. § 2253(c)(1); Fed. R. App. P. 22; 9th

13 Cir. R. 22-1;  *Allen v. Ornoski,* 435 F.3d 946, 950-951 (9th Cir. 2006); s*ee also United States v.*

14 *Mikels*, 236 F.3d 550, 551-52 (9th Cir. 2001).  Generally, a petitioner must make "a substantial

15 showing of the denial of a constitutional right" to warrant a certificate of appealability. *Id.;* 28 U.S.C.

16 § 2253(c)(2); *Slack v. McDaniel*, 529 U.S. 473, 483-84 (2000).  "The petitioner must demonstrate

17 that reasonable jurists would find the district court's assessment of the constitutional claims

18 debatable or wrong." *Id.* (*quoting Slack*, 529 U.S. at 484).  In order to meet this threshold inquiry,

19 the petitioner has the burden of demonstrating that the issues are debatable among jurists of reason;

20 that a court could resolve the issues differently; or that the questions are adequate to deserve

21 encouragement to proceed further. *Id.*  In this case, no reasonable jurist would find this court's

22 denial of the petition debatable or wrong.  The court therefore denies petitioner a certificate of

23 appealability.

24 / / / / / / / / / / /

25 / / / / / / / / / / /

26

11

## V.  Conclusion

**IT IS THEREFORE ORDERED** that the federal petition for a writ of habeas corpus is **DENIED**.

**IT IS FURTHER ORDERED** that petitioner's motion for a decision (ECF No. 14) is **DENIED AS MOOT.**

**IT IS FURTHER ORDERED** that petitioner is **DENIED A CERTIFICATE OF APPEALABILITY.**

**IT IS FURTHER ORDERED** that the clerk of court **SHALL ENTER JUDGMENT ACCORDINGLY.**

Dated this ____3rd____ day of February, 2014.

_____
UNITED STATES DISTRICT JUDGE