**UNITED STATES DISTRICT COURT**

**DISTRICT OF NEVADA**

DONNY COOPER,                    )
                                 )
          Petitioner,            )        2:10-cv-01832-JCM-NJK
                                 )
vs.                              )        **ORDER**
                                 )
STATE OF NEVADA, *et al.*,       )
                                 )
          Respondents.           )
_____/

        This action is a petition for a writ of habeas corpus filed pursuant to 28 U.S.C. § 2254, by Donny Cooper, who is represented by counsel.  This matter comes before the court on the merits of the petition.

**I.  Procedural History**

        On December 16, 1998, the state filed a criminal complaint charging petitioner with three counts of attempted lewdness with a child under the age of 14 stemming from three incidents in 1998 with two separate children.  (Exhibit 2).[1]  On July 12, 1999, petitioner unconditionally waived his preliminary hearing pursuant to the terms of a plea agreement in which he would plead to one felony but the adjudication of the charge would be stayed for one year with conditions that he "stay out of

---

        [1]  The exhibits referenced in this order are found in the court's record at ECF No. 12.

1   trouble." (Exhibit 1).  If he stayed out of trouble, he would be able to withdraw his felony plea and

2   plead to a gross misdemeanor, but if he did not, he would be sentenced to a felony.  (Exhibit 1).

3       On July 23, 1999, the state filed an information and a no-contest plea agreement.  (Exhibits 3

4   & 4).  The no-contest plea agreement provided, in pertinent part, as follows:

5       I further understand that the Court will include as part of my sentence,
        in addition to any other penalties provided by law, lifetime supervision
6       commencing after any period of probation or any term of
        imprisonment and period of release upon parole; said special sentence
7       of lifetime supervision must begin upon release from incarceration.

8   (Exhibit 4, at p. 2).  On July 26, 1999, the court canvassed petitioner but did not mention lifetime

9   supervision.  (Exhibit 5).  Petitioner stated to the court at arraignment that he had reviewed the plea

10  agreement with his attorney who had answered any questions he had.  The state district court,

11  pursuant to the no-contest plea, stayed adjudication for one year and set a status check.  (Exhibit 5).

12      On June 15, 2000, the state received a package of witness statements from the police

13  department in Lothian, Scotland, U.K., attesting that petitioner, while attending a wedding in

14  Scotland, had sexually abused a thirteen-year-old boy.  (Exhibit 6).  On June 16, 2000, the state filed

15  a motion to order pre-sentence investigation report and a set sentencing date.  (Exhibit 6).  Petitioner

16  opposed the motion.  (Exhibit 7).  On July 26, 2000, and August 1, 2000, the state and petitioner

17  filed supplemental points and authorities.  (Exhibits 8 & 9).

18      On August 3, 2000, petitioner filed a motion requesting "a rehearing or a transfer of the case

19  back to department XI, or alternatively for a definitive ruling on the state's motion to renege on the

20  plea bargain, and if applicable, for a pre-sentence investigation report." (Exhibit 10).  On November

21  8, 2000, petitioner filed a pre-sentence memorandum.  (Exhibit 11).  On February 15, 2001, the court

22  adjudged petitioner guilty of attempted lewdness with a child under 14 and sentenced him to prison

23  for 36-96 months with lifetime supervision commencing upon completion of probation, parole, or

24  imprisonment; the transcript of the sentenced is mistakenly dated April 15, 2001.  (Exhibits 12 &

25

26

2

13).  On February 27, 2001, the court entered a judgment of conviction which sentenced petitioner to 36-96 months imprisonment and imposed a sentence of lifetime supervision.  (Exhibit 14).

On March 22, 2001, petitioner filed a notice of appeal.  (Exhibit 15).  On May 10, 2001, petitioner filed a fast track statement, arguing that in violation of Nevada law, the sentencing court relied upon a defective psychosexual evaluation because the report was not prepared by a psychologist or a psychiatrist, but by a social worker who did not use generally-accepted diagnostic tools.  (Exhibit 16).  By order filed November 1, 2001, the Nevada Supreme Court affirmed petitioner's conviction.  (Exhibit 18).  Remittitur was issued on November 27, 2001.  (Exhibit 19).

On March 11, 2002, petitioner filed a judicial notice which complained about his appellate attorney and set forth additional claims he wanted his attorney to raise.  None of the claims pertained to lifetime supervision.  (Exhibit 20).

On March 29, 2002, petitioner filed a post-conviction habeas petition and a memorandum of points and authorities in the state district court.  (Exhibits 21 & 22).  Petitioner argued that his appellate counsel was ineffective because he failed to raise claims that: (1) the state's expert used diagnostic tools which were not generally accepted; and (2) the court erred when it failed to allow live testimony of his medical experts.  (*Id.*).

On June 24, 2002, the court filed an amended judgment of conviction, which changed petitioner's credit for time served from 69 days to 97 days.  (Exhibit 26).

The state district court entered findings of fact, conclusions of law, and an order on August 6, 2002, denying petitioner's post-conviction habeas petition.  (Exhibit 28).  Petitioner filed a notice of appeal.  (Exhibit 27).  By order filed March 3, 2003, the Nevada Supreme Court affirmed the denial of the post-conviction habeas petition.  (Exhibit 29).  Remittitur issued March 28, 2003.  (Exhibit 30).

On March 11, 2005, petitioner was paroled from prison.  On June 24, 2005, his sentence was discharged.  On June 29, 2005, petitioner filed a motion to strike his lifetime supervision.  (Exhibit

1   31).  The court denied petitioner's motion on June 22, 2005.  (Exhibit 32).  Petitioner did not appeal

2   the denial of this motion.

3          On October 8, 2007, petitioner filed a motion to allow interstate transfer of lifetime

4   supervision to Arkansas.  (Exhibit 33).  A hearing on the motion was held on October 23, 2007, and

5   the court denied the motion without prejudice.  (Exhibit 34, at p. 6; Exhibit 35).

6          On January 28, 2008, petitioner filed a motion to correct an illegal sentence.  (Exhibit 36).

7   Petitioner argued that his no-contest plea was not knowingly entered into because he received no

8   advice on the nature and requirements of lifetime supervision.  (*Id.*).  A hearing on this motion was

9   held on March 12, 2008.  (Exhibit 39).  On July 1, 2008, the state district court entered a written

10  ruling denying the motion.  (Exhibit 40).  Petitioner appealed.  (Exhibit 41).  By order filed October

11  22, 2009, the Nevada Supreme Court affirmed the denial of the motion to correct illegal sentence.

12  (Exhibit 44).  Remittitur issued on November 17, 2009.  (Exhibit 45).

13         On October 20, 2010, through counsel, petitioner filed the federal habeas petition.  (ECF No.

14  1).  Petitioner alleges that he did not knowingly or intelligently enter his no-contest plea because the

15  plea agreement failed to explain the material terms and conditions of lifetime supervision.  Petitioner

16  also alleges that his counsel was ineffective for failing to properly advise him of the exact nature of

17  the lifetime supervision requirements.  (ECF No. 1).

18         Respondents filed a motion to dismiss on December 13, 2010, asserting that petitioner failed

19  to name the proper custodian in the caption of his petition.  (ECF No. 5).  By order filed May 9,

20  2011, the court denied respondents' motion to dismiss and directed petitioner to file an amended

21  caption page naming the proper respondents.  (ECF No. 8).  On May 11, 2011, petitioner filed an

22  amended caption page.  (ECF No. 9).  On May 16, 2011, the court set further scheduling deadlines,

23  specifically, respondents were directed to answer the petition within forty-five days and petitioner

24  was directed to file a reply within forty-five days of being served with the answer.  (ECF No. 10).

25

26

1    Respondents filed an answer on June 30, 2011, along with exhibits.  (ECF Nos. 11 & 12).

2   Petitioner did not exercise his right to file a reply to the answer.  *See* order at ECF No. 10; *see also*

3   Rules Governing Section 2254 Cases in the United States District Courts, at Rule 5(c) ("The

4   petitioner may submit a reply to respondents' answer or other pleading within a time fixed by the

5   judge." ).  On May 14, 2013, petitioner filed a motion requesting a decision.  (ECF No. 14).

6   **II.  Federal Habeas Corpus Standards**

7    The Antiterrorism and Effective Death Penalty Act ("AEDPA"), at 28 U.S.C. § 2254(d),

8   provides the legal standard for the court's consideration of this habeas petition:

> An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim –
>
> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
>
> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

The AEDPA "modified a federal habeas court's role in reviewing state prisoner applications in order to prevent federal habeas 'retrials' and to ensure that state-court convictions are given effect to the extent possible under law." *Bell v. Cone,* 535 U.S. 685, 693-694 (2002).  A state court decision is contrary to clearly established Supreme Court precedent, within the meaning of 28 U.S.C. § 2254, "if the state court applies a rule that contradicts the governing law set forth in [the Supreme Court's] cases" or "if the state court confronts a set of facts that are materially indistinguishable from a decision of [the Supreme Court] and nevertheless arrives at a result different from [the Supreme Court's] precedent." *Lockyer v. Andrade,* 538 U.S. 63, 73 (2003) (quoting *Williams v. Taylor,* 529 U.S. 362, 405-406 (2000) and citing *Bell v. Cone,* 535 U.S. 685, 694 (2002)).  The formidable standard set forth in section 2254(d) reflects the view that habeas corpus is "'a guard against extreme malfunctions in the state criminal justice systems,' not a substitute for ordinary error correction

5

through appeal." *Harrington v. Richter*, 562 U.S. ___, ___, 131 S.Ct. 770, 786 (2011) (quoting *Jackson v. Virginia*, 443 U.S. 307, 332 n.5 (1979)).

A state court decision is an unreasonable application of clearly established Supreme Court precedent, within the meaning of 28 U.S.C. § 2254(d), "if the state court identifies the correct governing legal principle from [the Supreme Court's] decisions but unreasonably applies that principle to the facts of the prisoner's case." *Lockyer v. Andrade,* 538 U.S. at 75 (quoting *Williams*, 529 U.S. at 413). The "unreasonable application" clause requires the state court decision to be more than merely incorrect or erroneous; the state court's application of clearly established federal law must be objectively unreasonable. *Id.* (quoting *Williams*, 529 U.S. at 409). In determining whether a state court decision is contrary to, or an unreasonable application of federal law, this court looks to the state courts' last reasoned decision. *See Ylst v. Nunnemaker*, 501 U.S. 797, 803-04 (1991); *Shackleford v. Hubbard*, 234 F.3d 1072, 1079 n.2 (9th Cir. 2000), *cert. denied*, 534 U.S. 944 (2001).

In a federal habeas proceeding, "a determination of a factual issue made by a state court shall be presumed to be correct," and the petitioner "shall have the burden of rebutting the presumption of correctness by clear and convincing evidence." 28 U.S.C. § 2254(e)(1). If a claim has been adjudicated on the merits by a state court, a federal habeas petitioner must overcome the burden set in § 2254(d) and (e) on the record that was before the state court. *Cullen v. Pinholster*, 131 S.Ct. 1388, 1400 (2011).

**III. Discussion**

**A. Petition is Untimely under the AEDPA**

The Antiterrorism and Effective Death Penalty Act (AEDPA) amended the statutes controlling federal habeas corpus practice to include a one-year statute of limitations on the filing of federal habeas corpus petitions. With respect to the statute of limitations, the habeas corpus statute provides:

> (d)(1) A 1-year period of limitation shall apply to an application
> for a writ of habeas corpus by a person in custody pursuant to the

judgment of a State court.  The limitation period shall run from
the latest of–

> (A) the date on which the judgment became final by the
> conclusion of direct review or the expiration of the time
> for seeking such review;

> (B) the date on which the impediment to filing an
> application created by State action in violation of the
> Constitution or laws of the United States is removed, if the
> applicant was prevented from filing by such State action;

> (C) the date on which the constitutional right asserted was
> initially recognized by the Supreme Court, if the right has
> been newly recognized by the Supreme Court and made
> retroactively applicable to cases on collateral review; or

> (D) the date on which the factual predicate of the claim or
> claims presented could have been discovered through the
> exercise of due diligence.

(2) The time during which a properly filed application for State
post-conviction or other collateral review with respect to the
pertinent judgment or claim is pending shall not be counted
toward any period of limitations under this subsection.

28 U.S.C. § 2244(d).

For purposes of the AEDPA limitations period, "a judgment becomes 'final' in one of two ways – either by the conclusion of direct review by the highest court, including the United States Supreme Court, to review the judgment, or by the expiration of the time to seek such review, again from the highest court from which such direct review could be sought." *Wixom v. Washington*, 264 F.3d 894, 897 (9th Cir. 2001).  "[W]hen a petitioner fails to seek a writ of certiorari from the United States Supreme Court, the AEDPA's one-year limitations period begins to run on the date the ninety-day period defined by Supreme Court Rule 13 expires." *Bowen v. Roe*, 188 F.3d 1157, 1159 (9th Cir. 1999).  United States Supreme Court Rule 13.1 provides that a petitioner has ninety days from the entry of judgment or entry of an order denying rehearing, within which to file a petition for certiorari. Sup. Ct. R. 13.1.  Rule 36(a) of the Nevada Rules of Appellate Procedure states that "[t]he filing of the court's decision or order constitutes entry of judgment."  Where a petitioner pursues a direct

7

appeal to the state's highest court but declines to pursue a petition for writ of certiorari with the United States Supreme Court, the petitioner's conviction becomes final upon the expiration of the time to file a petition for writ of certiorari.  *See Jimenez v. Quarterman*, 555 U.S. 113, 119 (2009).  Once the judgment of conviction becomes final, the petitioner has 365 days to file a petition for relief under 28 U.S.C. § 2254, with tolling of the time for filing during the pendency of a properly filed application for state post-conviction or other collateral review with respect to the pertinent judgment or claim . . . ."  28 U.S.C. § 2254(d).

In the instant case, the judgment of conviction was entered on February 27, 2001.  (Exhibit 14).  The Nevada Supreme Court's order of affirmance on direct review was filed on November 1, 2001.  (Exhibit 18).  Because petitioner did not file a petition for writ of certiorari to the United States Supreme Court, his conviction became final on January 30, 2002, which is ninety days after the Nevada Supreme Court filed its order of affirmance.  The AEDPA statute of limitations began to run on January 31, 2002.

On March 29, 2002, when petitioner filed his state habeas petition, 51 days of untolled time for filing a federal petition had elapsed.  (Exhibit 21).  The AEDPA limitations period was tolled until petitioner's state habeas petition and appeal from the denial of his petition was resolved by the Nevada Supreme Court.  *See* 28 U.S.C. § 2244(d)(2).  On March 3, 2003, the Nevada Supreme Court entered an order affirming the denial of petitioner's post-conviction state habeas petition.  (Exhibit 29).  Remittitur was issued on March 28, 2003.  (Exhibit 30).  The period of tolling under 28 U.S.C. § 2244(d)(2) ended with the Nevada Supreme Court's issuance of remittitur on March 28, 2003.  The AEDPA statute of limitations began to run again and expired 314 days later, on February 6, 2004.  On October 20, 2010, through counsel, petitioner filed the federal habeas petition.  (ECF No. 1).  The federal petition was filed untimely, years after the expiration of the AEDPA limitations period.

The United States Supreme Court has held that the AEDPA's statute of limitations "is subject to equitable tolling in appropriate cases."  *Holland v. Florida*, 130 S.Ct. 2549, 2560 (2010).  The

1    Supreme Court reiterated that "a petitioner is entitled to equitable tolling only if he shows: '(1) that

2    he has been pursuing his rights diligently, and (2) that some extraordinary circumstance stood in his

3    way' and prevented timely filing." *Holland*, 130 S.Ct. at 2562 (quoting *Pace v. DiGuglielmo*, 544

4    U.S. 408, 418 (2005)).  In the instant case, petitioner has not presented this court with any argument

5    or evidence that he is entitled to equitable tolling.  As such, the federal habeas petition is subject to

6    dismissal with prejudice as untimely.

7        **B.  Petition Lacks Merit**

8        Even assuming that the petition was not time-barred, the federal habeas petition lacks merit.

9    Petitioner alleges that he did not knowingly and intelligently make his no-contest plea because the

10   plea agreement was vague and ambiguous regarding the lifetime supervision requirement.

11       Under federal law, to be valid, a guilty plea must be knowing, voluntary, and intelligent.  *U.S.*

12   *v. Brady*, 397 U.S. 742, 748 (1970).  A guilty plea must represent a voluntary and intelligent choice

13   among alternative courses of action open to a defendant.  *Hill v. Lockhart,* 474 U.S. 52, 56 (1985).

14   Advice for a guilty plea does not require a description of every element of the offense.  *Bargas v.*

15   *Burns*, 179 F.3d 1207, 1216 (9th Cir. 1999) (citation omitted).  The court looks to what a defendant

16   reasonably understood at the time of the plea.  *U.S. v. Quan*, 789 F.2d 711, 713 (9th Cir. 1986).  The

17   record must demonstrate that the defendant understands that he is waiving his privilege against self-

18   incrimination, his right to a jury trial, and his right to confront accusers.  *Boykin v. Alabama*, 395

19   U.S. 238, 243 (1969).  "Solemn declarations in open court carry a strong presumption of verity."

20   *Blackledge v. Allison*, 431 U.S. 63, 73-74 (1977); *see also United States v. Anderson*, 993 F.2d 1435,

21   1438 (9th Cir. 1993) (defendant's statements, made in open court at time of his plea, are entitled to

22   great weight).

23       In the instant case, the no-contest plea agreement provided, in pertinent part, as follows:

24           I further understand that the Court will include as part of my sentence,
             in addition to any other penalties provided by law, **lifetime**
25           **supervision** commencing after any period of probation or any term of
             imprisonment and period of release upon parole; **said special sentence**

26

9

1                      **of lifetime supervision must begin upon release from**
                     **incarceration.**

2

3 (Exhibit 4, at p. 2) (emphasis added).  The agreement further provides that: "All of the foregoing

4 elements, consequences, rights, and waiver of rights have been thoroughly explained to me by my

5 attorney." (*Id.*, at p. 4).  On July 26, 1999, the state district court canvassed petitioner, but did not

6 specifically mention lifetime supervision.  (Exhibit 5).  During the canvass, petitioner stated to the

7 judge that he had reviewed the plea agreement with his attorney, who had answered any questions he

8 had.  (*Id.*).

9         On appeal from the denial of petitioner's motion to correct illegal sentence, the Nevada

10 Supreme Court ruled that petitioner's claim fell outside of the narrow scope of claims permitted in a

11 motion to correct an illegal sentence.  (Exhibit 44, at p. 2).  The Court ruled that petitioner's sentence

12 is "facially legal and nothing in the record indicates that the district court lacked jurisdiction to

13 impose the sentence." (*Id.*).  The Nevada Supreme Court further stated:

14                 Finally, we note that Cooper acknowledges that he was informed in the
                guilty plea agreement that he would be subject to lifetime supervision,

15                 and therefore he cannot demonstrate that his guilty plea was invalid on
                this basis. <u>See Palmer v. State</u>, 118 Nev. 823, 831, 59 P.3d 1192, 1197

16                 (2002) (holding that this court will not invalidate a guilty plea if the
                totality of the circumstances indicate that the defendant was aware of

17                 the consequence of lifetime supervision prior to the entry of the guilty
                plea).  Accordingly, we conclude that the district court did not err by

18                 denying Cooper's motion and we order the judgment of the district
                court affirmed.

19 (*Id.*, at pp. 2-3).  The Nevada Supreme Court's ruling was reasonable.  Looking to what petitioner

20 reasonably understood at the time of the no-contest plea, this court finds that the no-contest plea

21 agreement clearly informed petitioner that his sentence included a lifetime supervision. *See U.S. v.*

22 *Quan*, 789 F.2d 711, 713 (9th Cir. 1986).  Reviewing both the no-contest plea agreement (Exhibit 4)

23 and the state district court's canvass of petitioner regarding his plea (Exhibit 5), this court finds that

24 all provisions of the no-contest plea were knowing, voluntary, and intelligent. *Hill v. Lockhart,* 474

25 U.S. 52, 56 (1985); *U.S. v. Brady*, 397 U.S. 742, 748 (1970).  Petitioner has cited no applicable

26

federal authority for the proposition that the language contained in the no-contest plea agreement was insufficient to inform petitioner that his sentence included lifetime supervision.  Petitioner has failed to meet his burden of proving that the Nevada Supreme Court's ruling was contrary to, or involved an unreasonable application of, clearly established federal law, as determined by the United States Supreme Court, or that the ruling was based on an unreasonable determination of the facts in light of the evidence presented in the state court proceeding.  The federal habeas petition in this case is without merit.

## IV.  Certificate of Appealability

District courts are required to rule on the certificate of appealability in the order disposing of a proceeding adversely to the petitioner or movant, rather than waiting for a notice of appeal and request for certificate of appealability to be filed.  Rule 11(a).  In order to proceed with his appeal, petitioner must receive a certificate of appealability.  28 U.S.C. § 2253(c)(1); Fed. R. App. P. 22; 9th Cir. R. 22-1;  *Allen v. Ornoski*, 435 F.3d 946, 950-951 (9th Cir. 2006); s*ee also United States v. Mikels*, 236 F.3d 550, 551-52 (9th Cir. 2001).  Generally, a petitioner must make "a substantial showing of the denial of a constitutional right" to warrant a certificate of appealability. *Id.;* 28 U.S.C. § 2253(c)(2); *Slack v. McDaniel*, 529 U.S. 473, 483-84 (2000).  "The petitioner must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong."  *Id.* (*quoting Slack*, 529 U.S. at 484).  In order to meet this threshold inquiry, the petitioner has the burden of demonstrating that the issues are debatable among jurists of reason; that a court could resolve the issues differently; or that the questions are adequate to deserve encouragement to proceed further.  *Id.*  In this case, no reasonable jurist would find this court's denial of the petition debatable or wrong.  The court therefore denies petitioner a certificate of appealability.

/ / / / / / / / / / /

/ / / / / / / / / / /

11

V.  Conclusion

IT IS THEREFORE ORDERED that the federal petition for a writ of habeas corpus is DENIED.

IT IS FURTHER ORDERED that petitioner's motion for a decision (ECF No. 14) is DENIED AS MOOT.

IT IS FURTHER ORDERED that petitioner is DENIED A CERTIFICATE OF APPEALABILITY.

IT IS FURTHER ORDERED that the clerk of court SHALL ENTER JUDGMENT ACCORDINGLY.

Dated this _3rd_ day of February, 2014.

_____
UNITED STATES DISTRICT JUDGE

12